### NORFOLK SOUTHERN RAILROAD COMPANY v. B. R. LACY,
#### STATE TREASURER.

(Filed 23 April, 1924.)

**1. Taxation—Statutes—Penalties.**

The taxes to be paid by a railroad and other like corporations direct to the State are due and payable within thirty days from date of receipt of the assessment and levy (sec. 67a, ch. 92, Public Laws of 1920), subject to a penalty of 25 per cent of the amount of the taxes if not so paid, except in instances of appeal.

**2. Same—Municipal and State Purposes.**

The discount allowed to corporations paying their taxes before 30 November, and the penalty after 1 December, under the provisions of section 88, chapter 92, Public Laws of 1919, relate to county and other like municipal corporations, and this is not in conflict with section 67a, chapter 92, Public Laws of 1920, as to the taxes to be paid by such corporations direct to the State Treasurer for State purposes.

**3. Same—Constitutional Law—Class Discrimination.**

The provisions of the laws of 1919, and those of 1920, requiring railroads and other like corporations to pay their State taxes within a shorter period than those to the counties, etc., is a uniform legislative classification applying equally to all within its terms and not objectionable as a discrimination or a denial of the equal protection of the laws prohibited by our Constitution, Art. V, sec. 3.

APPEAL by plaintiff from *Daniels, J.* Controversy without action upon the following agreed facts:

1. Norfolk Southern Railroad Company, a corporation originally created under the laws of the State of Virginia and authorized to do business in the State of North Carolina, owns and operates a line of railroad running from the State line to Charlotte, North Carolina, and

has under lease certain other lines of railroads, one of which is the Durham and South Carolina Railroad.

2. Norfolk Southern Railroad Company, as lessee, is obligated to pay the taxes on the Durham and South Carolina Railroad Company's railroad property.

3. Norfolk Southern Railroad Company and Durham and South Carolina Railroad Company, in accordance with the laws of the State, duly listed with the State Tax Commission that part of their respective properties within the State which is under the law required to be listed with the State Tax Commission, and the said properties were duly valued by said Commission and the value so fixed was, by the State Tax Commission, duly certified to the State Auditor in order that he might, under the law, compute that part of the ad valorem property tax which was required to be paid direct to the State Treasurer.

4. The State Auditor duly computed the ad valorem property tax of thirteen cents (13 cents) levied under section 2 of chapter 1, Public Laws, Extra Session 1920 (An act entitled "An act to revise and limit tax rates for the year of 1920, in compliance with provisions of the Revaluation Act; to provide additional revenue for the State from franchise and license taxes, and for other purposes"), ratified .... August, 1920, and certified the taxes of Norfolk Southern Railroad Company and Durham and South Carolina Railroad Company to the State Treasurer.

5. The pertinent sections of said act are:

"Sec. 2. That section two of chapter ninety of the Public Laws of one thousand nine hundred and nineteen, entitled, 'An act to raise revenue,' be repealed and the following substituted for section two of that act:

"Sec. 2. Poll and property tax. That no tax on property or polls shall be levied for the year 1920 for the use of the State or for the State Pension Fund. There shall be levied and collected for the year 1920, for the benefit of the State public school fund, an ad valorem tax of thirteen cents on every one hundred dollars value of real and personal property in this State required to be listed by the revenue laws of the State and on each taxable poll or male between the ages of twenty-one and fifty years, except the poor or infirm whom the county commissioners may declare and record fit subjects for exemption, there shall be levied and collected for the year 1920 a tax of thirty-nine cents.

"Sec. 3. That section three of chapter ninety of the Public Laws of 1919 be repealed and designated as 'obsolete.'

"Sec. 4. That the taxes levied in the foregoing section two shall be collected and paid into the State Treasury for the benefit of the public school fund in the manner provided by law for the collection and settlement of State taxes."

6. State taxes in North Carolina are collectible under the provisions of chapter 92, Public Laws 1919, being an act entitled "An act to amend chapter 231 of the Public Laws of 1917, in relation to the assessment of property and the collection of taxes," ratified 10 March, 1919.

7. On 28 August, 1920, Norfolk Southern Railroad Company received a notice from the State Treasurer. (See copy attached, marked "A.") And Durham and South Carolina Railroad Company received a similar notice, except it was stated that its property was valued at $372,300, and its assessment for State school tax, 13 cents on each $100 valuation, was $483.99.

The franchise tax, so called, is not involved in this present controversy as the same has not been paid.

8. Norfolk Southern Railroad Company, on its own behalf and on behalf of its lessor, Durham and South Carolina Railroad Company, claimed, and so notified the State Treasurer, that under section 88 of chapter 92, Public Laws 1919, aforesaid, it could not be legally compelled to pay said taxes until 30 November, and when they were then paid it was entitled to a discount of 1 per cent, and that no penalty could be collected if paid on or before 31 December, 1920.

The State Treasurer would not accept this contention, but insisted that these taxes were due and payable under section 67a of said chapter 92, Public Laws of 1920, within thirty days from the date of receipt of notice of the assessment and levy, and if not so paid, Norfolk Southern Railroad Company and its lessor, Durham and South Carolina Railroad Company, would be subject to a penalty of 25 per cent of the amount of said taxes.

9. Norfolk Southern Railroad Company agreed with the Attorney-General of the State, to whom the matter had been submitted, that it would within said time, and in order to avoid the penalty, on its own behalf and on behalf of its lessor, Durham and South Carolina Railroad Company, pay the amount so demanded to the State Treasurer at the time demanded, and would, upon a case agreed, submit to the court the question of its right to the discount allowed in section 88 of said chapter 92, Public Laws 1917, and the right of the Treasurer to compel payment at said time.

10. Norfolk Southern Railroad Company, under protest, then paid to B. R. Lacy, Treasurer of the State of North Carolina, the full sum demanded of it, and its lessor, Durham and South Carolina Railroad Company, to wit:

For itself, the sum of $35,130.50.

For D. & S. C. R. R. Co., $483.99.

11. Norfolk Southern Railroad Company has duly made written demand upon said B. R. Lacy, State Treasurer, that he return to it

the portion of said payments claimed by it to be in excess of the correct amount of the taxes justly chargeable and collectible against it at the said time, which excess it claims to be one per cent (1%) of the said amount of taxes, pursuant to section 88 of chapter 92 of Public Laws of 1919, and an additional one per cent (1%) as damages on account of its being required to make said payments sixty days earlier than the time in which it was entitled to pay.

12. And the parties hereto now submit the questions in controversy to the court as follows:

(*a*) Was Norfolk Southern Railroad Company entitled to the discount of 1 per cent allowed under section 88 of said chapter 92, Public Laws 1919?

(*b*) Was Norfolk Southern Railroad Company entitled as a matter of right, under said section 88, to wait until 30 November to pay said taxes, and then to pay same subject to a discount of 1 per cent, or to wait until 31 December to pay said taxes without discount, and if so, is Norfolk Southern entitled to interest on the sum so paid from 28 September to 30 November as damages for payment of 28 September to avoid penalty?

Judgment for defendant and appeal by plaintiff.

*R. N. Simms for plaintiff.*

*Attorney-General Manning and Assistant Attorney-General Nash for defendant.*

ADAMS, J. This action was instituted in the Superior Court of Wake County on 29 November, 1920, to determine the rights of the plaintiff in regard to the payment of taxes. It involves the construction of certain statutes enacted in 1919 and 1920, a brief review of which is necessary to an understanding of the plaintiff's position.

The Machinery Act of 1919, Public Laws of 1919, ch. 92, contains the provisions herein set out. Section 61 provides that the State Tax Commission, now the State Department of Revenue (Public Laws 1921, ch. 40), shall constitute a board of appraisers and assessors for railroad, canal, and steamboat companies and other companies exercising the right of eminent domain. Section 62 requires an officer of each company to return for assessment and taxation under oath or affirmation all the property belonging to such corporation within the State, described as follows: "The number of miles of such railroad lines in each county in this State and the total number of miles in this State, including the roadbed, right of way and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, and the land upon which situated and necessary to their use; water stations and land, coal chutes and land, and real estate and personal

property of every character necessary for the construction and success-ful operation of such railroad or used in the daily operation, whether situated on the charter right of way of the railroad or on additional land acquired for this purpose, except as provided below, including, also, if desired by the State Tax Commission, Pullman or sleeping cars or refrigerator cars owned by them or operated over their lines: *Provided, however,* that all machine and repair shops, general office build-ings, storehouses and contents located outside of the right of way, and also real and personal property, other than the property as returned above to the State Tax Commission, shall be listed for purposes of tax-ation by the principal officers or agents of such companies with the list takers of the county where the real and personal property may be situ-ated, in the manner provided by law for the listing and valuation of real and personal property." Section 64, after prescribing the method of valuing the tangible property and the franchise of. the company, pro-vides in paragraph *c* that the State Tax Commission on or before 1 September shall certify to the Auditor of the State, chairman of the county commissioners, and the mayor of each city or incorporated town the amount apportioned to his county, city, or town, that all taxes due the State from any railroad company shall be paid by the treasurer of each company directly to the Treasurer of the State within thirty days after 1 July of each year, and that upon failure to make such payment the company shall be liable to suit and to a penalty of 25 per cent of the tax. In section 67a there is a provision that the taxes due the State shall be paid by the secretary or treasurer of the company to the Treas-urer of the State within thirty days after the receipt of a bill for the taxes due; but as we construe the several statutes the two clauses desig-nating the time of payment are not in conflict. By virtue of section 65 the Commission is authorized to give a hearing to any interested com-pany touching the valuation and assessment of its property. If such hearing is not had and there is no other obstacle in the way, the tax should be paid within the time fixed in section 64 (*a*); but if there is a hearing, then within the time fixed in section 67a. However, no ques-tion is presented in regard to unreasonable delay in making payment, and we refer to the alleged conflict in deference to the argument ad-vanced by the plaintiff.

The following provision appears in section 88: "All taxes shall be due on the first Monday in October in each year, and on all taxes paid in the months of October and November a discount shall be given to the taxpayer of 1 per cent. All taxes paid in the month of December shall be paid at the net amount charged, and from and after 1 January a penalty of 1 per cent per month shall be charged and collected by the sheriff or tax collector; that is to say, that on all taxes paid in the month

of January, after 1 January, a penalty of 1 per cent shall be added on the taxes paid, and in the month of February, after 1 February, a penalty of 2 'per cent shall be added, and an additional penalty of 1 per cent for each additional month of delay in settlement of same." The plaintiff contends that it is entitled to the discount provided in this section, and the defendant insists that the provision has no application to the taxes which each company is directed to pay to the Treasurer of the State, and that it applies exclusively to taxes paid to the sheriff or tax collector of each county or municipality. In our opinion the defendant's position is the correct one. The plaintiff was entitled to the benefit of section 88 on all taxes collected by the sheriff or tax collectors of the various counties in which certain of its property was listed by virtue of the proviso in section 62, but not on the taxes payable to the Treasurer of the State under sections 64 and 67a. This is obvious from the context. The discount allowed by virtue of section 88 relates to the tax list placed in the hands of the sheriff for collection and not to taxes paid directly to the Treasurer of the State under the provisions of section 64 (*c*) or section 67a.

The plaintiff further contends that if this is the correct interpretation, section 88 was enacted in breach of the constitutional requirement that laws shall be passed taxing by a uniform rule all real and personal property, according to its true value in money. Constitution, Art. V, sec. 3. We do not assent to this proposition. It has been said that perfect uniformity and perfect equality of taxation, in all the aspects in which the human mind can view it, is a baseless dream. *Edge v. Robertson* and *Cunard Co. v. Robertson* (Head Money Cases), 112 U. S., 580; 28 Law. Ed., 798; *State Railroad Tax Cases,* 92 U. S., 612; 28 Law. Ed., 663. With reference to locality, a tax is uniform when it operates with equal force and effect in every place where the subject of it is found (*Edge v. Robertson, supra*), and with reference to classification, it is uniform when it operates without distinction or discrimination upon all persons composing the described class. Tested by this standard, the tax which the plaintiff impeaches cannot be declared void on the ground that it conflicts with the uniformity clause of the State Constitution. Cooley on Taxation, ch. 6; Desty on Taxation, 1119; *Gatlin v. Tarboro,* 78 N. C., 119; *S. v. Powell,* 100 N. C., 525; *Lacy v. Packing Co.,* 134 N. C., 567; *Land Co. v. Smith,* 151 N. C., 70.

The plaintiff's further contention that section 88 denies to it the equal protection of the laws is at variance with the decision of the Supreme Court of the United States in *Railway Company v. Watts,* 260 U. S:, 519; 67 Law. Ed., 375, and in *Railroad Co. v. Doughton,* 262 U. S., 413; 67 Law. Ed., 1051.

The judgment of the Superior Court is

Affirmed.