JUAN ANTONIO LOPEZ SALAS AND MARIA RESENDEZ, PLAINTIFFS V. DAVID McGEE, BOTH INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN EMPLOYEE OF THE WAKE COUNTY SHERIFF'S DEPARTMENT; GARY W. TOLER, BOTH INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN EMPLOYEE OF THE WAKE COUNTY SHERIFF'S DEPARTMENT; JOHN H. BAKER IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF WAKE COUNTY; CHRISTY BROWDER HICKS, BOTH INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS AN EMPLOYEE OF THE N.C. DEPARTMENT OF REVENUE; RICHARD W. RIDDLE, BOTH INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN EMPLOYEE OF THE N.C. DEPARTMENT OF REVENUE; AND JANICE H. FAULKNER, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF THE N.C. DEPARTMENT OF REVENUE

No. COA95-188

(Filed 4 February 1997)

**Taxation §§ 211, 217 (NCI4th)— controlled substance tax — jeopardy assessment—failure to request hearing—failure to pay tax—trial court without jurisdiction**

The trial court had no jurisdiction to hear plaintiffs' claim challenging a controlled substance jeopardy tax assessment on constitutional grounds where (1) plaintiffs were given written notice of their right to request a hearing before the Secretary of Revenue pursuant to N.C.G.S. § 105-241.1(g) but failed to request a hearing, and (2) plaintiffs failed to contest the tax assessment under N.C.G.S. § 105-267 by first paying the tax and then seeking a refund from the Department of Revenue.

**Am Jur 2d, Federal Tax Enforcement § 59; Administrative Law § 423.**

Judge GREENE concurring.

Appeal by plaintiffs from order allowing defendants' motions for summary judgment entered 7 November 1994 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 14 November 1995.

*David H. Rogers, Esq., for plaintiff-appellants.*

*Attorney General Michael F. Easley, by Assistant Attorney General Christopher E. Allen, for defendant-appellees.*

McGEE, Judge.

On 5 April 1994 plaintiff, Juan Antonio Lopez Salas, was indicted by a Wake County grand jury on one count of conspiracy to traffic in marijuana by transportation and three counts of conspiracy to maintain a motor vehicle for the purposes of using, keeping and/or selling a controlled substance.

On 6 April 1994, the defendant law enforcement officers from the Wake County Sheriff's Department, along with the defendant N.C. Department of Revenue employees, arrived at plaintiffs' home and placed Juan Antonio Salas under arrest. They personally delivered a Notice of Controlled Substance Tax Assessment to Salas and his wife, plaintiff Maria Resendez, in the amount of $3,916,887.52 pursuant to N.C. Gen. Stat. § 105-241.1(a) and (b).

The Department of Revenue employees demanded immediate payment from plaintiffs pursuant to N.C. Gen. Stat. § 105-113.111. When plaintiffs stated they were unable to pay, the Revenue employees issued a Warrant For Collection Of Taxes under N.C. Gen. Stat. § 105-242(a) to both plaintiffs, which again listed the tax, penalty and interest the Department stated the plaintiffs owed to the State of North Carolina. Revenue employees seized all of plaintiffs' property, including the property of their minor son, under the jeopardy assessment provisions of N.C. Gen. Stat. § 105-241.1(g).

Plaintiffs filed no objection to the assessment and did not request a hearing. Revenue employees delivered to plaintiffs a notice of intent to levy upon the plaintiffs' mobile home on 12 May 1994.

On 23 May 1994, plaintiffs filed suit in Wake County Superior Court against defendants pursuant to 42 U.S.C. § 1983 alleging violations of their civil rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, § 19 of the North Carolina Constitution. The complaint also alleged

intentional infliction of emotional distress and requested punitive damages from defendants. On 24 May 1994, plaintiffs filed a motion for a temporary restraining order and preliminary injunction to prevent defendants from levying upon plaintiffs' property, including their mobile home. A temporary restraining order was granted 24 May 1994. On 2 June 1994, a hearing on the motion for a preliminary injunction was held. An order was entered which, in effect, directed that (1) no levy be made on the mobile home for one year or "until such time that it is determined that plaintiffs have been in actual or constructive possession of controlled substances;" (2) the property taken from plaintiffs' ten-year-old son be returned; and (3) all proceeds received from the sale of plaintiffs' personal property be held in escrow by the Department of Revenue "pending further review by the court."

Plaintiffs amended their complaint on 7 June 1994, alleging that Article 2D, Chapter 105 of the North Carolina General Statutes, the Controlled Substance Tax, is unconstitutional and that N.C. Gen. Stat. § 105-267 is unconstitutional, both facially and as it was applied to plaintiffs in that it constituted a taking of their property without due process and in violation of their civil rights. Plaintiffs also filed a motion for partial summary judgment on 7 June 1994.

On 8 August 1994, defendants McGee, Toler and Baker filed their answer, a motion to dismiss, and a motion for sanctions. Later that month, defendants Hicks, Riddle and Faulkner filed a motion for summary judgment. A hearing was held 31 October 1994 and Judge Donald W. Stephens entered an order allowing defendants' motion for summary judgment and denying plaintiffs' motion for partial summary judgment and defendants' motion for sanctions. From this order, plaintiffs appeal.

The issue presented by plaintiffs is whether G.S. 105-267, when applied to the controlled substance tax procedure, is constitutional. Plaintiffs' due process claim rests on their contention that the only avenue for contesting a jeopardy tax assessment is under G.S. 105-267, which prevents a court from taking jurisdiction over a contested tax assessment suit unless the aggrieved taxpayer first pays the tax and then seeks a refund from the North Carolina Department of Revenue.

G.S. 105-267 specifically states that "[n]o court of this State shall entertain a suit of any kind brought for the purpose of preventing the

collection of any tax imposed in this Subchapter." Our Courts have interpreted this provision to mean "there shall be no injunctive or declaratory relief to prevent the collection of a tax, *i.e.*, the taxpayer must pay the tax and bring suit for a refund." *Enterprises, Inc. v. Dept. of Motor Vehicles*, 290 N.C. 450, 455, 226 S.E.2d 336, 339 (1976). G.S. 105-267 states that after paying the tax, a refund may be demanded from the Secretary of Revenue within thirty days after payment of the tax and if the refund is not made within ninety days, the taxpayer may sue the Secretary of Revenue in the courts of this state for the amount so demanded. In this case, plaintiffs did not pay, and stated they could not pay, the assessed tax and therefore they were unable to avail themselves of the procedures mandated in G.S. 105-267.

The constitutionality of G.S. 105-267 was upheld by our Supreme Court in *Swanson v. State of North Carolina*, 335 N.C. 674, 684, 441 S.E.2d 537, 543, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 598 (1994). The Supreme Court stated "the refund procedure provided in section 105-267 is free from any constitutional infirmity." *Swanson*, 335 N.C. at 684, 441 S.E.2d at 543. The Court recognized that this statute requires paying the tax before challenging the legality or constitutionality of a tax, but said, "[w]e are convinced this procedure comports with due process under the United States Supreme Court's jurisprudence on the subject as it relates to taxation. That Court has long held that postdeprivation remedies in the area of taxation can comport with due process." *Id.* Even in cases where the taxpayer is challenging the constitutionality of a tax, failure to comply with the "State's statutory postpayment refund demand procedure" set forth in the statute bars the court from hearing the taxpayer's claim. *Swanson*, 335 N.C. at 680-681, 441 S.E.2d at 540-41; *See also 47th Street Photo, Inc. v. Powers*, 100 N.C. App. 746, 749, 398 S.E.2d 52, 54 (1990), *disc. review denied, motion to dismiss allowed*, 329 N.C. 268, 407 S.E.2d 835 (1991) (holding "a constitutional defense to a tax does not exempt a plaintiff from the mandatory procedure for challenging the tax set out in § 105-267"); *Bailey v. State Of North Carolina*, 330 N.C. 227, 412 S.E.2d 295 (1991), *cert. denied*, 504 U.S. 911, 118 L. Ed. 2d 547 (1992).

In addition to the procedures in G.S. 105-267, the plaintiffs in this case had another avenue to contest their controlled substance tax assessment. Here, the Department of Revenue proceeded under the jeopardy tax assessment procedures in G.S. 105-241.1(g). This statute states "the Secretary [of Revenue] may at any time within the appli-

cable period of limitations immediately assess any tax the Secretary finds is due from a taxpayer if the Secretary determines that collection of the tax is in jeopardy and immediate assessment is necessary in order to protect the interest of the State." G.S. 105-241.1(g). Under this additional option in G.S. 105-241.1(g) for a taxpayer to contest a controlled substance jeopardy tax assessment, the taxpayer may request "a hearing on the jeopardy assessment by following the procedure described in the notice."

The pre-printed portion of the Notice Of Controlled Substance Tax Assessment that was personally delivered to the plaintiffs in this case set forth the following hearing procedure available in G.S. 105-241.1:

> This assessment is proposed pursuant to G.S. 105-113.111 . . . . If you desire a hearing before the Secretary of Revenue with respect to this proposed assessment, you must submit a written request for hearing within thirty days after the date of this notice, as provided by G.S. 105-241.1. Your request should set forth in detail your objection to the assessment and must be timely served upon the Secretary of Revenue. Unless your application for hearing is filed within the time stated, this proposed assessment will become final and conclusive.

> In the event you fail to respond immediately to this proposed assessment by remitting the full amount shown due or by posting a bond, collection may proceed pursuant to G.S. 105-241.1(g) or G.S. 105-242 without regard to whether you have requested a hearing.

On the day the assessment was imposed, plaintiffs were presented written documents informing them of their right to a hearing before the Secretary of Revenue but they did not request a hearing. After more than thirty days had passed without a hearing having been requested by plaintiffs, Revenue employees proceeded with a notice to levy upon plaintiffs' mobile home.

Plaintiffs had two procedures available to them for challenging their controlled substance jeopardy tax assessment. They failed to avail themselves of the hearing procedures provided for in G.S. 105-241.1(g) for a hearing before the Secretary of Revenue. Therefore, their other option was to contest their tax assessment under G.S. 105-267, requiring them to first pay the tax before seeking a refund. The plaintiffs did not comply with the statutory refund

demand procedure in G.S. 105-267, nor did they use the hearing provisions before the Secretary of Revenue in G.S. 105-241.1(g). Therefore, the trial court was barred from hearing their action. The trial court did not err in granting defendants' motion for summary judgment.

Affirmed.

Judge GREENE concurs with a separate opinion.

Judge MARTIN, MARK D. concurs.

Judge GREENE concurring:

Section 105-241.1(g) of the North Carolina General Statutes provides that the Secretary of Revenue "may" give the taxpayer notice of a proposed jeopardy assessment and pursuant to that notice the taxpayer may request a hearing. In this case, the notice was given and the taxpayers did not request a hearing. I therefore agree with the majority that in this case, because the taxpayers had a right to a hearing and did not request one, summary judgment was properly entered for the defendants.

I do note, however, that the taxpayers' due process rights would have been violated had the Secretary not given the taxpayers notice and an opportunity to be heard on the assessment. In those situations where the Secretary proceeds without notice (which the statute suggests she may), the taxpayer is permitted to question the assessment only upon payment of the tax, N.C.G.S. § 105-267 (1995), and there is no evidence that the taxpayers had the ability to pay the large assessment in question. In this event, there would be no practical method to question the tax and this would be violative of the taxpayers' due process rights. *See General Textile Printing & Process. v. Rocky Mount,* 908 F. Supp. 1295, 1304 (E.D.N.C. 1995) (statute imposing prerequisite on party that he cannot meet " 'shock[s] the conscience' [and] offend[s] 'a sense of justice' ").